

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN, TEXAS

Gerald C. Mann
ATTORNEY GENERAL

Hon. Joe L. Hill, Chairman
Committee on Privileges and Elections
The Senate
Austin, Texas

Dear Sir:

Opinion No. 0-3247
Re: Constitutionality of H. B.
No. 183, providing for run-
off elections in cities
having a population in
excess of 200,000.

Please refer to your letter of March 5, 1941, re-
questing the opinion of this department on the constitution-
ality of House Bill No. 183, the caption of which reads as
follows:

"AN ACT to provide for and regulate the
holding of runoff elections in cities and
towns having a population in excess of two
hundred thousand (200,000) inhabitants, ac-
cording to the last preceding or any future
Federal Census; providing that cities not
using voting machines may adopt the prefer-
ential type ballot in lieu of the procedure
set forth in this Act; repealing all laws,
parts of law, charter provisions, and
ordinances in conflict herewith; and de-
claring an emergency."

Section 2 of the Bill provides:

"This law shall not apply to any city
whose charter now, or hereafter, provides
for the selection of its officers by means
of a preferential type of ballot; provided
that such city does not use voting machines
as the legal method of voting."

House Bill No. 183 is framed as a general law. It
is designed to cause elections for municipal office in cities
having a population in excess of 200,000 inhabitants to be
conducted by either the run-off or the preferential ballot
system, and not by simple plurality.

We note that under the present Federal Census only
three municipalities can meet the population requirements.
These cities are Dallas, Houston and San Antonio. We under-
stand that Dallas now employs a run-off system almost iden-
tical with that outlined in House Bill No. 183; and that

Houston employs the preferential type ballot and is consequently exempted from the provisions of the Bill. Of the three, San Antonio alone presently employs the plurality method of selection. Does a bill so constructed infringe upon any provisions of our Constitution?

Section 5 of Article 11 of our Constitution, the Home Rule Amendment, was adopted for the people in 1912. It provides a measure of local self-government for cities with more than 5,000 inhabitants and reads in part as follows:

"Cities having more than five thousand (5000) inhabitants may, by a majority vote of the qualified voters of said city, at an election held for that purpose, adopt or amend their charters, subject to such limitations as may be prescribed by the Legislature, and providing that no charter or any ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State; * * *"

Important also is Section 56 of Article 3, which reads in part as follows:

"Sec. 56. The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law, * * *.

"Regulating the affairs of counties, cities, towns, wards or school districts;

"* * *

"Incorporating cities, towns or villages, or changing their charters;

"For the opening or conducting of elections, or fixing or changing the places of voting;

"* * *

"And in all other cases where a general law can be made applicable, no local or special law shall be enacted; * * *"

It is now well settled that the Legislature yet retains control over Home Rule cities. The privilege of local self-government resident in these cities since 1912 is held "subject to such limitation as may be prescribed by the Legislature," and no charter may contain any provision inconsistent

with the Constitution and laws of this State. Hunt v. Atkinson (Com. App.) 18 S. W. (2d) 594; City of Beaumont v. Fall, 116 Tex. 314, 291 S. W. 202; LeGois v. State, 80 Tex. Cr. R. 356, 190 S. W. 724; Dry v. Davidson (C. C. A.) 115 S. W. (2d) 689, writ refused.

In the Davidson case the language of the Court is:

"The Legislature may regulate Home Rule cities in such way as it sees fit, provided it does not do so by local or special laws."

The question is therefore presented, is House Bill No. 183 a local or special law?

We noted at the outset that House Bill No. 183 will in any event presently apply only to Houston, Dallas, and San Antonio. We also noticed that Dallas employs the system provided in the Bill and that Houston, by employing a preferential ballot is exempt; San Antonio is the only municipality in Texas presently affected.

However, the mere fact that San Antonio alone is the only city presently affected by House Bill No. 183 is not sufficient to render it unconstitutional. The Bill is not drawn so inflexibly that it can never apply to other cities. Should Dallas or Houston change their present systems, House Bill No. 183 would immediately apply. Moreover, it will apply to all other cities in Texas as soon as their population exceeds the requisite 200,000. Clark v. Finley, 93 Tex. 171, 54 S. W. 343; City of Ft. Worth v. Bobbitt, 121 Tex. 14, 36 S. W. (2d) 417; Bexar County v. Tynan, 128 Tex. 223, 97 S. W. (2d) 467.

In the Bobbitt case the Supreme Court said:

"Of course, we do not mean to hold that an Act general in its nature and terms would be in contravention of the above constitutional provisions, merely because at the time of its passage it only affects one city; in fact, we hold to the contrary * * *"

And in the Tynan case, the Court added:

"The Legislature may, upon a proper and reasonable classification, enact a general law which at the time of its enactment is applicable to only one county; provided its application is not so inflexibly fixed as to prevent it ever being applicable to other counties. * * *"

"While the terms of the act in question strongly suggest that it was made in view of prevailing conditions, and could not become

applicable to other counties in the future,
yet we resolve the doubt upon this point in
favor of the validity of the Act."

Following the suggestion of the Supreme Court in the
Tynan case, we resolve any doubt upon this point in favor of
the validity of the Act.-- Hill.

The question remains, however, as to whether there
is a reasonable relation between the basis of classification
and the end to be attained by the Bill. In other words, is
there a reasonable basis upon which the Legislature may con-
clude that run-off elections should be required in cities with
more than 200,000 population, but that such elections need not
be required in smaller cities?

The general principle is well settled that the Legis-
lature may classify municipalities according to population, pro-
vided that there is a direct and reasonable relation between
the basis of classification and the end to be obtained. In the
following cases, the courts concluded that there was such relation:
Clark v. Finley, 93 Tex. 177, 54 S. W. 343; Hall v. Bell County,
138 S. W. 178 (affirmed, 153 S. W. 121); O'Brien v. Amerman, 112
Tex. 254, 247 S. W. 270; Watson v. Sabine Royalty Co., 120 S. W.
(2d) 938 (writ refused). On the other hand, in the following
cases the laws were invalidated because the courts could find
no such relation: Randolph v. State, 36 S. W. (2d) 484; North
Texas Traction Co. v. Bryan, 116 Tex. 479, 294 S. W. 527; Smith
v. State, 120 Tex. Cr. 431, 49 S. W. (2d) 739; Bexar County v.
Tynan, 128 Tex. 223, 97 S. W. (2d) 467; Wood v. Marfa Independent
School District, 123 S. W. (2d) 429; Ex parte Ferguson, 132 S.
W. (2d) 408.

We are unable to say that there is no reasonable rela-
tion between the end to be attained and the basis of classifica-
tion adopted in this Bill. The end to be attained apparently is
to prevent the election of municipal officers by well organized
minorities who, because of their organization, may secure a plur-
ality for their candidates without being able to secure a majority.
We cannot say that the Legislature would not reasonably conclude
that there is more danger from organized minorities in large cities
than in smaller communities, or that the population figure set is
not a reasonable point at which to draw the line of classification.
The Legislature might also reasonably conclude that the larger
cities are more able financially to bear the expense of run-off
elections than smaller cities. Bearing mind that all reason-
able doubts as to the validity of such laws should be resolved in
favor of their constitutionality, we conclude that the basis of
classification is not without reasonable relation to the object
of the Bill and, therefore, that the Bill is constitutional.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By /s/ James P. Hart
                    Assistant

APPROVED MAY 22, 1941
/s/ Gerald C. Mann